UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JAMES BONINI
CLERK

09 JUN 10  PM 4: 01

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

OMS INVESTMENTS, INC., a Delaware
Corporation, 10250 Constellation
Boulevard, Suite 2800, Los Angeles,
California 90067, and

THE SCOTTS COMPANY LLC, an Ohio
Limited Liability Company, 14111
Scottslawn Road, Marysville, Ohio 43041

Plaintiffs,

vs.

PENNINGTON SEED, INC. a Delaware
Corporation, 1280 Atlanta Highway,
Madison, Georgia 30650;

PENNINGTON SEED, INC. OF
NEBRASKA, a Nebraska Corporation,
1280 Atlanta Highway, Madison, Georgia
30650;

CENTRAL GARDEN & PET COMPANY
a California Corporation, 1340 Treat
Boulevard, Suite 600, Walnut Creek,
California 94597

Defendants.

CASE NO. **2 : 0 9** cv  **4 7 0**

**JUDGE FROST**

**MAGISTRATE JUDGE KING**

JUDGE _____

JURY DEMAND ENDORSED HEREON

## COMPLAINT

Plaintiffs OMS Investments, Inc. and The Scotts Company LLC (collectively "Scotts" or

"Plaintiffs"), for their complaint against defendants Pennington Seed, Inc., Pennington Seed, Inc.

of Nebraska, and Central Garden & Pet Company (collectively "Pennington" or "Defendants"),

allege as follows:

## NATURE OF THE ACTION

1.      Scotts is one of the world's leading marketers of branded consumer lawn and

garden products, with a full range of products for professional horticulture as well.  Scotts owns

some of the industry's most recognized brands, including SCOTTS® and MIRACLE-GRO®. Scotts also has created a unique trade dress for each of those brands, including the famous green and yellow trade dress of the MIRACLE-GRO® line.

2.      Defendants, competitors of Scotts in the lawn and garden industry, have, without Scotts' permission, adopted a trade dress for its "Sunburst" grass seed product line that is confusingly similar to the trade dress Scotts uses on its MIRACLE-GRO® product line, including a predominating green and yellow color scheme.  Pennington's actions constitute trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a) and state law.

3.      Were this not enough, Pennington is also infringing Scotts' federally registered family of GRO trademarks and service marks, which are used in connection with a wide range of goods and services including fertilizers, plants, soils and other lawn and garden items. Pennington's actual and intended use and registration of the mark QUIKGRO2X (the "QUIKGRO2X Mark"), which incorporates Scotts' famous and distinctive GRO suffix, in connection with grass seed, is also likely to cause confusion as to a connection with or association between Pennington and Scotts, or between the goods and services of each, constituting trademark infringement, dilution, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* and state law.

4.      In addition, there is a direct and actual controversy between the parties regarding Scotts' registration and use of three pending trademark applications incorporating the WATER SMART Mark, including Trademark Application Serial Numbers 77/392,595, 77/238,879, and 77/323,047.  Pennington claims Scotts is not entitled to register or use the WATER SMART Marks as exemplified in Trademark Application Serial Numbers 77/392,595, 77/238,879, and 77/323,047 or Trademark Registration Number 3,477,872 (collectively, the "WATER SMART

2

Marks"), when, in fact, for a variety of reasons, Scotts is entitled to use and register the WATER SMART Marks. Indeed Pennington has filed opposition and cancellation proceedings against Scotts' WATER SMART Marks in the Trademark Trial and Appeals Board. Pennington's claims present an actual, substantial and immediate controversy that requires adjudication by the Court so that the parties know their legal rights, liabilities and status.

5.      Scotts now seeks injunctive relief to stop Pennington's infringement of Scotts' distinctive and famous trade dress and trademarks, and to terminate the controversy between the parties and remove uncertainties with respect to Scotts' right to use and register the WATER SMART Marks. In addition, Scotts seeks damages to compensate Scotts for the harm caused by Pennington's wrongful conduct.

## THE PARTIES

6.      Plaintiff OMS Investments, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 10250 Constellation Boulevard, Suite 2800, Los Angeles, California 90067. Plaintiff is a subsidiary of The Scotts Company LLC.

7.      Plaintiff The Scotts Company LLC is a limited liability company organized and existing under the laws of Ohio, with its principal place of business at 14111 Scottslawn Road, Marysville, Ohio 43041.

8.      Defendant Pennington Seed, Inc. is a corporation organized and existing under the laws of Delaware, with a business address of 1280 Atlanta Highway, Madison, Georgia 30650.

9.      On information and belief, Defendant Pennington Seed, Inc. of Nebraska is a Nebraska corporation with a business address of 1280 Atlanta Highway, Madison, Georgia 30650. On information and belief, Pennington Seed, Inc. of Nebraska is the owner of the

3

trademark applications and registrations on which Pennington bases its opposition to Scotts' WATER SMART Marks.

10.     Defendant Central Garden and Pet Company ("Central") is, on information and belief, a California corporation with a business address of 1340 Treat Boulevard, Suite 600, Walnut Creek, California 94597.  Central is a publicly-traded company with several thousand employees and, on information and belief, is the parent corporation of Pennington.  Central competes with Scotts in the sale of residential lawn care products.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to (i) 28 U.S.C. § 1331, as this action arises out of the laws of the Unites States of America; (ii) 15 U.S.C. § 1121, as this action involves claims under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*; (iii) 28 U.S.C. § 1338(a) and (b), as this action arises in part under an Act of Congress relating to trademarks; and (iv) as this action includes claims under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  This Court has supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367 as such claims are part of the same case or controversy.

12.     This Court has personal jurisdiction over Defendants and venue is proper in this judicial district under 28 U.S.C. § 1391 because, among other things, Defendants do business in this district and have engaged and are engaging in statutory violations and other unlawful activities that are causing substantial injury to Scotts in this district.

## VENUE

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants do business in this district and have engaged and are engaging in statutory violations and activities that are causing substantial injury to Scotts in this district.

## FACTUAL ALLEGATIONS

14.     Scotts markets a complete line of plant and garden products under the famous and distinctive MIRACLE-GRO trademark.  The MIRACLE-GRO® line was first introduced to the American public in 1951 and has been continuously sold ever since.  MIRACLE-GRO® products include a wide variety of plant foods, lawn foods, rooting hormones, bloom enhancers, enhanced soils, and potting mixes, as well as live plants and gardening gloves.  MIRACLE-GRO® is now one of the most recognizable and valuable brands in the consumer lawn and garden industry.  In the United States, consumer awareness of the MIRACLE-GRO® brand is several times greater than that of the nearest competitor.

15.     In addition to offering one of the world's leading lawn and garden brands, Scotts is a leader in giving back to the community.  Scotts is a participant in the "Give Back to Gro" initiative, which encompasses numerous programs for community development and environmental stewardship.  For instance, Scotts and its affiliates are one of the founding sponsors of the National Garden, a living laboratory for environmental, botanical and horticultural education on three acres adjacent to the U.S. Botanical Garden Conservatory in Washington D.C.  In the Miracle-Gro Kids Columbus program, the company has adopted a classroom of third graders, providing them with educational, health, family and social support throughout their academic career, culminating in an ensured college tuition.  The company also is committed to the environment.  Scotts and its affiliates are collectively recognized as one of

the leading recyclers in the United States.  Moreover, the company has won praise for its

environmental commitment, being certified to ISO 14001 standards, an international certification

that evaluates a company's ability to apply sound environmental principals.  In addition, The

Scotts Company LLC was elected to receive the Ohio Chemistry Technology Council's 2001

Award for Excellence in Responsible Care.

## Scotts' GRO Marks

16.    OMS owns numerous trademarks and service marks incorporating its famous and

distinctive MIRACLE-GRO mark and GRO element (the "GRO Marks").  Since at least as early

as 1951, Scotts has used one or more of its MIRACLE-GRO marks in connection with a wide

range of goods, including without limitation fertilizers, live plants and seeds, plant growing

media and soil conditioners, herbicides, plant containers, flower pots and planters, root

stimulating hormones, potting mix and soil, watering cans and work and gardening gloves; and

services, including without limitation, lawn and gardening consulting services, all as reflected in

the following representative registrations issued and applications pending on the Principal

Register of the United States Patent and Trademark Office ("USPTO"):

| Registered Mark | Registration No. |
| --- | --- |
| MIRACLE-GRO | 668868 |
| MIRACLE-GRO | 1223038 |
| EARTHGRO | 1378337 |
| EARTHGRO | 1378721 |
| EARTHGRO THE NATURAL CHOICE & Design | 1723116 |
| EARTHGRO THE NATURAL CHOICE & Design | 1726060 |
| MIRACLE-GRO | 2235973 |
| MIRACLE-GRO POUR & FEED | 2601682 |
| MIRACLE-GRO GARDEN WEED PREVENTER & PLANT FOOD | 2618698 |
| MIRACLE-GRO GARDEN WEED PREVENTER | 2618699 |
| MIRACLE-GRO SELECT PLANTS & DESIGN | 2723181 |
| MIRACLE-GRO PROFESSIONAL TREE & SHRUB CARE & Design | 2758533 |
| MIRACLE-GRO FAST ROOT | 2787356 |
| MIRACLE-GRO TREE & SHRUB CARE | 2809982 |

6

| | |
|---|---|
| MIRACLE-GRO SELECT PLANTS & DESIGN | 2816031 |
| MIRACLE-GRO & Design | 2820953 |
| MIRACLE-GRO & Design | 2822655 |
| MIRACLE-GRO | 2856922 |
| MIRACLE-GRO & Design | 2856923 |
| MIRACLE-GRO & Design | 2856924 |
| HAVE YOU USED MIRACLE-GRO LATELY? | 2870768 |
| MIRACLE-GRO SELECT PLANTS & Design | 2900658 |
| MIRACLE-GRO & Design | 2906855 |
| MIRACLE-GRO & Design | 2906856 |
| MIRACLE-GRO MOISTURE CONTROL POTTING MIX CONTAINS AQUACOIR & DESIGN | 2935663 |
| MIRACLE-GRO & Design | 2996098 |
| MIRACLE-GRO | 3074660 |
| MIRACLE-GRO GARDEN SOIL ROSES & Design | 3156217 |
| MIRACLE-GRO ORGANIC CHOICE | 3180531 |
| MIRACLE-GRO GARDEN SOIL TREES & SHRUBS & Design | 3182529 |
| MIRACLE-GRO GARDEN SOIL FLOWERS & VEGETABLES & Design | 3190987 |
| MIRACLE-GRO & Design | 3233837 |
| MIRACLE-GRO | 3456832 |
| GARDEN-GRO | 3498947 |
| IT'S GRO TIME | 3552933 |

| Pending Mark | Application No. |
|---|---|
| GARDEN GRO | 76/653762 |
| IT'S GRO TIME | 77/341556 |
| IT'S GRO TIME | 77/341562 |
| PRO GRO | 77/406779 |
| MIRACLE-GRO SELECT PLANTS | 77/421528 |
| ORGANIC-GRO | 77/699226 |
| ORGANIC-GRO | 77/699235 |
| SLO-GRO | 77/727926 |
| LET YOURSELF GRO | 78/795657 |
| GRO | 77/755926 |
| GRO | 77/755931 |
| GRO (STYLIZED) | 77/755934 |
| GRO (STYLIZED) | 77/755935 |
| GRO (STYLIZED) | 77/755938 |
| GRO (STYLIZED) | 77/755988 |

True and correct copies of these registrations or pages from the USPTO's online database reflecting the status of the marks are attached hereto as Exhibit 1

17.    Due to the national, and indeed, worldwide consumer recognition and goodwill of the GRO Marks, consumers have come to recognize the simple suffix "GRO" as symbolizing the

goodwill inherent in the GRO Marks, and associate the GRO suffix solely with Scotts and its line of high quality lawn and garden products.

18.     Each of the trademark registrations for the GRO Marks are valid and subsisting in full force, unrevoked and uncancelled. Notably, Registrations Nos. 668,868 (MIRACLE-GRO); 1,223,038 (MIRACLE-GRO); 2,235,973 (MIRACLE-GRO); 1,378,337 (EARTHGRO); 1,378,721 (EARTHGRO); 1,723,116 (EARTHGRO THE NATURAL CHOICE & Design); 1,726,060 (EARTHGRO THE NATURAL CHOICE & Design); 2,601,682 (MIRACLE-GRO POUR & FEED); 2,618,698 (MIRACLE-GRO GARDEN WEED PREVENTER & PLANT FOOD); and 2,618,699 (MIRACLE-GRO GARDEN WEED PREVENTER) are incontestable.

19.     The distinctiveness of Scotts' GRO Marks as well as Scotts' MIRACLE-GRO Trade Dress (collectively, the "Scotts Marks") is buttressed by their widespread secondary meaning in the marketplace. Scotts has expended and continues to expend substantial time, money and effort in promoting its Scotts Marks in magazines, newspapers, sports sponsorships and through nationally broadcast television and radio commercials. Further, since at least as early as 1997, Scotts has operated the popular website *miraclegro.com*, which offers product information on the MIRACLE-GRO products, as well as other lawn and garden-related information.

20.     Moreover, over the years, the Scotts Marks and the products associated with those marks have also received a significant amount of unsolicited press and have been the subject of numerous articles in major publications.

21.     Finally, Scotts has a pattern and practice of vigilantly policing and protecting its rights in and to the Scotts Marks throughout the United States and the world.

22.     As a result of Scotts' efforts, both the GRO Marks and the MIRACLE-GRO Trade Dress have acquired secondary meaning in that the public has come to recognize Scotts as the exclusive source of the goods and services bearing those marks. Clearly, the Scotts Marks have become assets of substantial value and symbols of Scotts' good will.

**Scotts' MIRACLE-GRO Trade Dress**

23.     In addition to the distinctive and famous MIRACLE-GRO® brand name, the trade dress that accompanies Scotts' MIRACLE-GRO® product line, particularly the green and yellow color combination of its packaging, has also become associated in the minds of the consuming public with Scotts and its high quality products.

24.     Specifically, the trade dress used on the MIRACLE-GRO® All Purpose Plant Food Product and the MIRACLE-GRO Water Soluble Lawn Food Product is comprised of a combination of numerous original and distinctive features that identify the products as emanating solely from Scotts, including:

- A green and yellow color combination that predominates the product packaging.
- A yellow background on the product containers.
- A photograph of a lawn or of plants and flowers across the bottom portion of the package.

25.     The unique combination of the features described above, combined with the other MIRACLE-GRO products featuring the famous and distinctive green and yellow color combination and other design elements including the trade dress subject to U.S. Trademark Registration No. 2,139,929 (collectively, the "MIRACLE-GRO Trade Dress"), creates an overall commercial impression that is inherently distinctive and that consumers have come to associate exclusively with Scotts. A true and correct representation of the MIRACLE-GRO® All Purpose

Plant Food Product and the MIRACLE-GRO Water Soluble Lawn Food Product and other products containing the MIRACLE-GRO Trade Dress is attached hereto as Exhibit 2.

26.     Indeed, the MIRACLE-GRO green and yellow color combination is so clearly associated in consumers' minds with Scotts that Scotts' subsidiary, OMS, was able to obtain U.S. Trademark Registration No. 2,139,929, which expressly covers the green and yellow color combination used in the MIRACLE-GRO Trade Dress. A true and correct copy of the Registration Certificate for this mark is attached hereto as Exhibit 3. This registration is incontestable, providing the green and yellow color combination with the presumption that it is strong and deserving of a wide scope of protection.

27.     Not only is the MIRACLE-GRO Trade Dress inherently distinctive, it has also achieved secondary meaning in the marketplace. For instance, since at least as early as 1951, Scotts has applied the distinctive MIRACLE-GRO Trade Dress to the MIRACLE-GRO® All Purpose Plant Food Product. Since that time, Scotts has used the distinctive MIRACLE-GRO Trade Dress on the MIRACLE-GRO Water Soluble Lawn Food Product. Scotts also has expended substantial effort and financial resources in promoting and advertising the MIRACLE-GRO Trade Dress in newspapers, magazines, sponsorships, and through television commercials broadcast throughout the United States. In addition, the MIRACLE-GRO® Trade Dress has been prominently featured on the popular website *www.miraclegro.com*, among others. Over the years, the MIRACLE-GRO Trade Dress has received a significant amount of unsolicited press and has been the subject of numerous articles in major publications.

28.     Scotts' promotional efforts have generated sales totaling hundreds of million for products bearing the MIRACLE-GRO Trade Dress. As a result of the widespread public recognition and renown of the MIRACLE-GRO Trade Dress, it has achieved fame and

10

secondary meaning in that consumers associate the MIRACLE-GRO Trade Dress solely with products of the highest quality and recognize Scotts as the exclusive source of the goods and services bearing that trade dress.

### Scotts' WATER SMART Marks

29.     Scotts owns Trademark Registration Number 3,477,872 for WATER SMART in Class 1 for "Fertilizers for domestic, agricultural and horticultural use," (the "WATER SMART Registration").

30.     Pennington recently filed a Petition to Cancel the WATER SMART Registration, proceeding number 92050878, in the Trademark Trial and Appeals Board. Pennington's Petition alleges a likelihood of confusion with Pennington's PENNINGTON SEED SMART SEED and WATER STAR Marks and that the WATER SMART Marks are somehow "misdescriptive." It further alleges that Pennington's PENNINGTON SEED SMART SEED and WATER STAR Marks are valid, distinctive, famous, and well-known and that Scotts' WATER SMART registration dilutes these marks. For a variety of reasons, Pennington's Cancellation Petition lacks merit and Scotts is entitled to continued use and registration of the WATER SMART Registration.

31.     Scotts also owns three Trademark Applications incorporating the WATER SMART Mark. These include Serial Number 77/392,595 for WATER SMART in Class 44 for "providing advice and information on the subjects of lawn care, environmental stewardship practices relating to lawn care, and the use of products relating to lawn care, including fertilizers, pesticides, herbicides, grass seed, soil, soil conditioners and amendments, and lawn and garden equipment via print, advertising, and the internet; providing in-store consulting services on the subjects of lawn care, environmental stewardship practices relating to lawn care, and the use of products relating to lawn care, including fertilizers, pesticides, herbicides, grass seed, soil, soil

conditioners and amendments, and lawn and garden equipment; lawn, tree, and shrub care services; consulting services in the field of lawn, tree, and shrub care"; Number 77/238,879 for WATER SMART FORMULA MAKES THE MOST OF EVERY DROP & Design in Class 1 for "Fertilizers for domestic, agricultural and horticultural use; soil amendments, soil conditioners, and soil improving agents for domestic, agricultural and horticultural use; plant food; potting soil; planting soil; growing media for plants; humus; manure; peat; compost; and loam"; and Number 77/323,047 for WATER SMART in Class 31 for "Grass seed; grass products, namely, grass sod and grass plugs; top soil; mulch; raw bark; peat moss; grass seed combined with fertilizer and mulch for the purpose of lawn repair; top soil containing fertilizer;" (collectively the "WATER SMART Applications").

32.    Pennington recently filed Notices of Opposition against each of Scotts' WATER SMART Applications. In its Trademark Trial and Appeals Board Oppositions (consolidated proceedings numbers 91186723, 91186718, and 91187785), Pennington claims that there is a likelihood of confusion between Pennington's PENNINGTON SEED SMART SEED and WATER STAR Marks and Scotts' WATER SMART Applications and that the WATER SMART Marks are somehow "misdescriptive." It further alleges that Pennington's PENNINGTON SEED SMART SEED and WATER STAR Marks are valid, distinctive, famous, and well-known and that Scotts' WATER SMART applications will dilute Pennington's Marks. For a variety of reasons, Pennington's Opposition Proceedings lack merit and Scotts is entitled to registration of the WATER SMART Applications.

33.    Pennington further claims that Scotts is not entitled to use the WATER SMART Marks as exemplified in Trademark Application Serial Numbers 77/392,595, 77/238,879, and

12

77/323,047 or Trademark Registration Number 3,477,872 (collectively the "WATER SMART Marks"). Again, Pennington's claims are in error.

## Defendants' Wrongful Conduct: Trademark Infringement

34.     On or about December 26, 2008, Pennington Seed, Inc. of Nebraska filed United States Trademark Application Serial No. 77/640,115 for the stylized mark QUIKGRO2X in International Class 031 for "grass seed additive sold only as applied to and as an integral component of the seed" (the "QUIKGRO2X Application"). This application is an intent-to-use application and was filed well after Scotts began use of its distinctive and famous GRO Marks.

35.     On information and belief, QUIKGRO2X branded products are available in Ohio and nationally through retailers such as Lowe's. A true and correct copy of printouts from Lowe's website showing QUIKGRO2X branded products for sale in Ohio and nationwide is attached hereto as Exhibit 4.

36.     Because Scotts' first use of its GRO Marks predates the filing date for Pennington's QUIKGRO2X Application, there is no question that the GRO Marks enjoy priority over the QUIKGRO2X Mark.

37.     Moreover, the QUIKGRO2X Mark is confusingly similar to the GRO Marks because they are similar in appearance, sound and commercial impression, pursuant to 15 U.S.C. § 1052(d). Among other things, the dominant elements of the QUIKGRO2X Mark is suffix and word element "GRO" – the primary element of Scotts' GRO family of marks.

38.     On information and belief, Pennington deliberately adopted the QUIKGRO2X Mark with the intention of trading off the goodwill associated with the GRO Marks. Indeed, by using the suffix "GRO" rather than the independent word "GROW," it is clear that the

QUIKGRO2X Mark was designed to trade off of consumers' understanding that "GRO" is uniquely associated with Scotts and its GRO Marks.

39.     Given the goodwill and public recognition arising from the association of the GRO Marks with Scotts, consumers are likely to believe that Scotts has sponsored, endorsed, approved or otherwise authorized the Pennington's use of the QUIKGRO2X Mark, when this is in fact not the case.

40.     To date, despite actual knowledge of Scotts' prior and senior rights in and to its GRO Marks, including MIRACLE-GRO, Pennington continues to use and seek registration of the QUIKGRO2X Mark.  This wrongful and willful use constitutes trademark infringement, false designation of origin, dilution and unfair competition in violation of the Lanham Act and of Ohio statutory and common law.

**Defendants' Wrongful Conduct: Trade Dress Infringement**

41.     Pennington is a national supplier of lawn products and professional turf products and is a direct competitor of Scotts.  Among Pennington's products that compete with those of Scotts are its "Sunburst" line of grass seed products including, but not limited to, its Kentucky 31 Tall Fescue (both Penkoted and not Penkoted varieties), Argentine Bahiagrass, Creeping Red Fescue, Fescue Plus Blend, Kwik Grass Mixture, Pennsylvania State Grass Seed Mixture, Annual Ryegrass, Pensacola Bahiagrass, Professional Contractor's Mixture, Professional Landscapers Mixture, and Thrifty Grass Seed Mixture products marketed and sold under the Pennington brand name (Collectively the "Pennington Sunburst Products").  Images of the trade dress Pennington uses on the Pennington Sunburst Products is attached as Exhibit 5.

42.     On information and belief, prior to 2004, the trade dress Pennington used on the Pennington Sunburst Products was radically different than the trade dress Pennington now uses

on those products.  For example, in Pennington's 2000 Product Catalog, the trade dress for the Kentucky 31 Tall Fescue grass seed product, is a simple trade dress featuring a clear bag in which the product name and a large white house predominates and which is radically different from the MIRACLE-GRO Trade Dress.  Likewise, unlike the current versions of the Pennington Sunburst Products trade dress, the former trade dress Pennington used on its Kwik Grass Mixture, Professional Contractor's Mixture, Professional Landscaper's Grass Seed, Pensacola Bahiagrass, Creeping Red Fescue, and Argentine Bahiagrass product packaging bore little or no resemblance to the MIRACLE-GRO Trade Dress.  Attached as Exhibit 6 are samples of prior trade dress Pennington used on the Pennington Sunburst Products.  On information and belief, the trade dress depicted in Exhibit 6 was used by Pennington until long after Scotts introduced its famous, unique and distinctive MIRACLE-GRO Trade Dress, including the MIRACLE-GRO All Purpose Plant Food and MIRACLE Lawn Food Product Trade Dress.

   43. On information and belief, sometime in or around 2004, Pennington revised the look of the trade dress used in connection with its Pennington Kentucky 31 Tall Fescue grass seed product and after 2004 Pennington revised the look of the trade dress for the other Pennington Sunburst Products.  In developing its new trade dress, Pennington adopted a trade dress for the Pennington Sunburst Products that was significantly different from the previous iterations and was highly reminiscent of the MIRACLE-GRO Trade Dress.

 

See Exhibit 7. Since 2004, and despite protests from Scotts. Pennington has expanded its use of the infringing trade dress.

44.     Pennington currently markets and sells Pennington Sunburst Products throughout the United States, including in Ohio.  Indeed, on information and belief, Pennington's Sunburst Products are available nationally through the same channels of trade as Scotts' products. including at retailers such as Wal-Mart, Lowe's, Target, and K-Mart, and can be found in close proximity to products bearing the MIRACLE-GRO Trade Dress.

### FIRST CLAIM FOR RELIEF

### Trademark Infringement under 15 U.S.C. § 1114

45.     Scotts repeats and realleges the allegations of paragraphs 1–44 as if fully set forth herein.

46.     Pennington's acts alleged herein constitute use of colorable imitations of Scotts' federally registered GRO Marks, in connection with the displaying, advertising and/or sale of unauthorized goods and services in commerce.  These activities create a likelihood of confusion, mistake or deception as to the affiliation. connection or association of Pennington with Scotts, or

as to the origin. sponsorship or approval of Pennington's goods and services by Scotts. in violation of 15 U.S.C. § 1114.

47.     Pennington's acts alleged herein are without Scotts' consent or authority.

48.     Pennington's acts alleged herein were with full knowledge of Scotts' rights. title and interest in the GRO Marks. and were made with the willful intent to trade on the goodwill associated with those marks and to cause confusion. mistake or deception in the minds of the consuming public.  Such acts have damaged. impaired and diluted that part of Scotts' goodwill symbolized by its famous GRO Marks. to Scotts' detriment.

49.     Pennington's use of the QUIKGRO2X Mark. which is confusingly similar to the GRO Marks. constitutes trademark infringement in violation of 15 U.S.C. §§ 1114.

50.     Pennington's wrongful conduct. unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Scotts.

51.     Scotts has no adequate remedy at law, and is entitled to injunctive relief prohibiting Defendants from using the QUIKGRO2X Mark, or any marks confusingly similar to the GRO Marks on their websites and in connection with their goods and services.

52.     As a direct and proximate result of Pennington's' trademark infringement. Scotts has been damaged in an amount to be proved at trial.

53.     The acts alleged herein constitute an exceptional case under 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### Trade Dress Infringement under 15 U.S.C. § 1125(a)

54.     Scotts repeat and reallege the allegations of paragraphs 1-53 as if fully set forth herein.

55.    The MIRACLE-GRO Trade Dress is inherently distinctive and has acquired secondary meaning.

56.    The MIRACLE-GRO Trade Dress is non-functional.

57.    Defendants have infringed and will continue to infringe Scotts' MIRACLE-GRO Trade Dress by copying and incorporating the elements of that trade dress into its Pennington Sunburst Products.

58.    Pennington's production, marketing, and sale of the Pennington Sunburst Products and the trade dress embodied therein creates a likelihood of confusion, mistake, or deception as to the source, origin, or sponsorship of Pennington's goods.  The trade dress of the Pennington Sunburst Products is likely to induce consumers to believe, contrary to fact, that Pennington's goods are rendered, sponsored, sold, approved by, or connected with Scotts.

59.    Pennington's production, marketing, and sale of the trade dress embodied in the Pennington Sunburst Products are without Scotts' consent or authority and commenced after the date of Scotts' first use of its famous and distinctive MIRACLE-GRO Trade Dress.  Pennington has committed their infringement with full knowledge of Scotts' rights in its MIRACLE-GRO Trade Dress.  Moreover, Pennington has willfully, deliberately, and maliciously engaged in the described acts with intent to injure Scotts and to deceive the public.

60.    Pennington's acts alleged herein have been and are being committed with the intent and purpose of appropriating and trading upon the goodwill and reputation associated with Scotts and the MIRACLE-GRO Trade Dress and have damaged, impaired, and diluted that part of Scotts' goodwill symbolized by the MIRACLE-GRO Trade Dress, to Scotts' immediate and irreparable harm.

61.     Pennington's unauthorized production, marketing and sale of their Pennington Sunburst Products, which products bear trade dress confusingly similar to the MIRACLE-GRO Trade Dress, constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     This case constitutes an exceptional case under 15 U.S.C. § 1117(a).

63.     Pennington's wrongful conduct has caused damage to Scotts' business reputation and goodwill, and unless restrained and enjoined, will continue to seriously and irreparably impair the value of the MIRACLE-GRO Trade Dress for which there is no adequate remedy at law.

64.     Scotts is entitled to injunctive relief prohibiting Pennington from using the trade dress currently embodied in the Pennington Sunburst Products pursuant to 15 U.S.C. § 1116.

65.     As a direct and proximate result of Pennington's trade dress infringement, Scotts has been damaged in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF

#### (Federal False Designation of Origin under 15 U.S.C. § 1125(a)

66.     Scotts repeats and realleges paragraphs 1-65 of this complaint as if fully set forth herein.

67.     Pennington's acts alleged herein constitute use in commerce of words, terms, names, symbols, devices, false designations of origin and false or misleading descriptions of fact which are likely to cause confusion or to cause mistake as to the origin, sponsorship or approval of Pennington's goods and services with those of Scotts in violation of 15 U.S.C. § 1125(a).

68.     Pennington's acts alleged herein constitute use in commercial advertising and promotion, the words, terms, names, symbols, devices, false designations of origin and false or

misleading descriptions of fact which misrepresents the nature, characteristics or qualities of its goods and services in violation of 15 U.S.C. § 1125(a).

69.     Pennington's acts alleged herein are without Scotts' consent or authority.

70.     Pennington's acts alleged herein were with full knowledge of Scotts' rights, title and interest in the Scotts Marks, and were made with the willful intent to trade on the goodwill associated with those marks and to cause confusion, mistake or deception in the minds of the consuming public. Such acts have damaged, impaired and diluted that part of Scotts' goodwill symbolized by its famous Scotts Marks, to Scotts' detriment.

71.     Pennington's use of the QUIKGRO2X Mark, which is confusingly similar to the GRO Marks, constitutes a false designation of origin and false advertising in violation of 15 U.S.C. §§ 1125(a).

72.     Pennington's use of the Pennington Sunburst Products trade dress, which is confusingly similar to the MIRACLE-GRO Trade Dress, constitutes a false designation of origin and false advertising in violation of 15 U.S.C. §§ 1125(a).

73.     Pennington's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Scotts.

74.     Scotts has no adequate remedy at law, and is entitled to injunctive relief prohibiting Pennington from using the QUIKGRO2X Mark or the Pennington Sunburst Products Trade Dress, or any marks confusingly similar to the Scotts Marks in connection with its goods and services.

75.     As a direct and proximate result of Pennington's trademark infringement, Scotts has been damaged in an amount to be proved at trial.

76.     The acts alleged herein constitute an exceptional case under 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF

### Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(c)

77.     Scotts repeats and realleges the allegations of paragraphs 1-77 as if fully set forth herein.

78.     Scotts owns the Scotts Marks, which are distinctive and famous as defined by Section 43(c) of the Lanham Act, 15 U.S.C.§ 1125(c) and which are known in the minds of the consuming public as representing goods and services of the highest quality.  The MIRACLE-GRO Trade Dress, taken as a whole, is famous and distinctive separate and apart from the fame of any registered mark contained within the MIRACLE-GRO Trade Dress.

79.     Pennington began using the QUIKGRO2X Mark in commerce in the United States after the GRO Marks became famous, which use has caused the dilution of the distinctive quality of the those marks.  Pennington began using the Pennington Sunburst Products Trade Dress in commerce in the United States after the MIRACLE-GRO Trade Dress became famous, which use has caused the dilution of the distinctive quality of the trade dress.

80.     On information and belief, Pennington's unauthorized use of the Pennington Sunburst Products Marks are on goods of a lesser quality than those which Scotts' consumers are used to and has resulted in the tarnishing of Scotts' reputation and the reputation of the Scotts Marks.

81.     Pennington's acts alleged herein were with full knowledge of Scotts' rights, title and interest in the Scotts Marks, and made with the willful intent to trade on the goodwill associated with those marks, to injure Scotts' reputation and with the intent to cause dilution of the Scotts Marks.  Pennington's acts alleged herein were committed after the Scotts Marks became famous.

21

82.    Pennington's acts alleged herein constitute dilution, tarnishment, blurring and disparagement of the Scotts Marks, and have diminished the value of those marks, in violation of 15 U.S.C. § 1125(c).

83.    Pennington's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Scotts.

84.    Scotts has no adequate remedy at law, and is entitled to injunctive relief prohibiting Defendants from using the QUIKGRO2X Mark, as well as the Pennington Sunburst Products Trade Dress or any marks confusingly similar to the Scotts Marks in connection with its goods and services.

85.    As a direct and proximate result of Pennington's trademark dilution, Scotts has been damaged in an amount to be proved at trial.

86.    The acts alleged herein constitute an exceptional case under 15 U.S.C. § 1117(a).

### FIFTH CLAIM FOR RELIEF

### Deceptive Trade Practices under Ohio Deceptive Trade

### Practices Act (O.R.C. § 4165.01 *et seq.*)

87.    Scotts repeats and realleges the allegations of paragraphs 1-87 as if fully set forth herein.

88.    By use in commerce of the QUIKGRO2X Mark which is confusingly similar to the GRO Marks, Defendants have passed off their goods as those of Scotts.

89.    By use in commerce of the Pennington Sunburst Products Trade Dress which is confusingly similar to the MIRACLE-GRO Trade Dress, Defendants have passed off their goods as those of Scotts.

90. Such use of the QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress in commerce has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of Pennington's goods.

91. Such use of the QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress in commerce has caused likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, Scotts.

92. By use in commerce of the QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress in connection with goods and services identical or closely related to those offered by Scotts, Defendants have represented that their goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

93. By use in commerce of the QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress in connection with goods and services identical or closely related to those offered by Scotts, Defendants have represented that their goods are of a particular standard, quality, or grade, when this is in fact not the case.

94. Pennington's wrongful conduct is in violation of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01 *et seq*.

95. Pennington's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Scotts.

96. Scotts has no adequate remedy at law and is entitled to injunctive relief prohibiting Defendants from using the QUIKGRO2X Mark and Pennington Sunburst Products Trade Dress pursuant to Ohio Rev. Code § 4165.03.

97. As a direct and proximate result of Pennington's trademark infringement, Scotts has been damaged in an amount to be proved at trial.

23

### SIXTH CLAIM FOR RELIEF

### State Common Law Trademark Infringement

98.     Scotts repeats and realleges the allegations of paragraphs 1-98 as if fully set forth herein.

99.     By use in commerce of the QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress in connection with goods and services identical or closely related to those offered by Scotts. Defendants have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, affiliation, connection or association of its goods and services with those of Plaintiffs.

100.    Pennington's unauthorized use of QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress constitutes trademark infringement under the common law of the State of Ohio.

101.    Defendants have acted willfully and with the intention and the likely result of confusing, misleading and deceiving customers.

102.    By reason of Pennington's conduct, Scotts is suffering and will continue to suffer irreparable harm unless and until enjoined and restrained by order of this Court.

103.    Scotts has no adequate remedy at law and is entitled to injunctive relief.

104.    As a direct and proximate result of Pennington's trademark infringement, Scotts has been damaged in an amount to be proved at trial.

## SEVENTH CLAIM FOR RELIEF

### State Common Law Dilution

105.    Scotts repeats and realleges the allegations of paragraphs 1-104 as if fully set forth herein.

106.    Pennington's actions in using the QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress in connection with goods and services identical or closely related to those offered by Scotts have diluted and will continue to dilute the value of the Scotts Marks, and will tarnish the goodwill and high-quality reputation associated with these marks. Additionally, Pennington's actions have caused and will continue to cause a diminution of the "commercial magnetism" and/or selling power of Scotts' trademarks.

107.    Pennington's unauthorized use of the QUIKGRO2X Mark and the Pennington Sunburst Products Trade Dress constitutes trademark dilution under the common law of the State of Ohio.

108.    By reason of Pennington's conduct, Scotts is suffering and will continue to suffer irreparable harm unless and until enjoined and restrained by order of this Court.

109.    Scotts has no adequate remedy at law and is entitled to injunctive relief.

110.    As a direct and proximate result of Pennington's trademark infringement, Scotts has been damaged in an amount to be proved at trial.

## EIGHTH CLAIM FOR RELIEF

### Common Law Unfair Competition

111.    OMS repeats and realleges the allegations of paragraphs 1-110 as if fully set forth herein.

112.    Pennington's goods are so marked, made up and described by it as to be calculated to mislead ordinary purchasers and lead them to mistake Pennington's goods for the

goods of Scotts. Additionally, Pennington's conduct consists of representations by it for the purpose of deceiving the public that its goods are those of Scotts.

113.    Pennington's wrongful conduct alleged herein has proximately caused and will continue to cause Scotts substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to its reputation, and diminution in value of its intellectual property.

114.    Pennington's wrongful conduct alleged herein constitute unfair and unlawful practices in violation of the common law of the State of Ohio to the injury of Scotts and the public.

115.    Pennington's conduct has damaged Scotts in an amount to be determined at trial, and unless restrained, will cause great and irreparable injury to Scotts.

116.    Scotts has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, directors, employees and agents, and all persons acting in concert with Defendants, from engaging in further such unlawful conduct.

117.    As a direct and proximate result of Pennington's actions, Scotts is entitled to restitution of those amounts unlawfully obtained by Pennington's wrongful conduct.

## NINTH CLAIM FOR RELIEF

### Unjust Enrichment

118.    Scotts repeats and realleges the allegations of paragraphs 1-117 as if fully set forth herein.

119.    Scotts has made a substantial investment of time, money and effort in promoting its products and services under the Scotts Marks. These marks have become assets of substantial value and symbols of Scotts' goodwill.

120.    By willfully infringing on the Scotts Marks, by intentionally misleading customers as to the products Defendants are selling, and by falsely advertising the products they are selling, Defendants have received a benefit in that they have received business actually intended for Scotts, and as such, Pennington's actions constitute an unjust enrichment to them.

121.    Pennington has used the QUIKGRO2X Mark, a mark that is confusingly similar to Scotts GRO Marks and the Pennington Sunburst Product Trade Dress, a trade dress that is confusingly similar to Scotts' MIRACLE-GRO Trade Dress. Defendants have knowingly and willfully received a benefit which in justice and equity belongs to Scotts.

122.    It will be unjust and inequitable for Defendants to benefit from their use of the QUIKGRO2X Mark or the Pennington Sunburst Product Trade Dress without payment and/or reimbursement to Scotts.

123.    By reason of Pennington's conduct, Scotts is suffering and will continue to suffer irreparable harm unless and until enjoined and restrained by order of this Court.

124.    As a direct and proximate result of Pennington's actions, Scotts is entitled to restitution of those amounts by which Defendants were unjustly enriched through their wrongful conduct.

### TENTH CLAIM FOR RELIEF
#### Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202

125.    Scotts repeats and realleges the allegations of paragraphs 1-124 as if fully set forth herein.

126.    There is a direct and actual controversy between the parties, in that Pennington claims that Scotts is not entitled to registration of Scotts' WATER SMART Marks and intends to

attempt to stop Scotts' use of its WATER SMART Marks and Scotts denies Pennington's claims. For a variety of reasons Scotts is entitled to use and register the WATER SMART Marks.

127.    Pennington's claims present an actual, substantial and immediate controversy that requires adjudication by the Court so that the parties know their rights, liabilities, status, and other legal rights.

## REQUEST FOR RELIEF

WHEREFORE, Scotts requests that judgment be entered in its favor and against Defendants as follows:

1.    Ordering that judgment be entered for Scotts and against Defendants on all claims alleged herein.

2.    Ordering that:

a.    Pursuant to 15 U.S.C. §§ 1116 and 1125(c), Ohio Rev. Code § 4165.03, Ohio Rev. Code § 1336.01 *et seq.* and/or state common law, Defendants and their agents, affiliates, employees, and all persons in active concert or participation with them, are enjoined and restrained from directly or indirectly (i) using, promoting, marketing, advertising, distributing, or selling any good or service bearing or under any of the QUIKGRO2X Mark or any mark confusingly similar to the Scotts Marks, or any other designation that infringes or dilutes the Scotts Marks in any manner; (ii) using, promoting, marketing, advertising, distributing, or selling any good or service featuring the MIRACLE-GRO Trade Dress, any trade dress confusingly similar thereto, or any other designation that infringes or dilutes the MIRACLE-GRO Trade Dress; and (iii) from continuing any and all of the acts of unfair competition and unfair business practices alleged herein; and

b.    Pursuant to 15 U.S.C. § 1118, that all labels, signs, prints, business cards, stationery, packages, wrappers, receptacles, websites, promotional materials, brochures, manuals, educational materials, and advertisements bearing (i) the QUIKGRO2X Mark or any mark

confusingly similar to the Scotts Marks, (ii) the MIRACLE-GRO Trade Dress or any other trade dress that is confusingly similar thereto, or any other designation that infringes or dilutes the MIRACLE-GRO Trade Dress in any manner, including that currently used on the Pennington Sunburst Products; and (iii) any other designation that infringes or dilutes the Scotts Marks in any manner, be delivered up and destroyed;

        c.      Defendants and their agents, affiliates, employees, and all persons in active concert or participation with them are enjoined and restrained from engaging in further acts which constitute unlawful, deceptive, and unfair business practices;

        d.      The QUIKGRO2X Mark is confusingly similar to and dilutive of the Scotts Marks, and are thus not entitled to registration by the USPTO;

        e.      The trade dress used on the Pennington Sunburst Products is confusingly similar to and dilutive of the MIRACLE-GRO Trade Dress;

        f.      Defendants voluntarily abandon United States Trademark Application Serial No. 77/640,115 for QUIKGRO2X; and

        g.      Defendants shall file with the Court and serve on Plaintiff, within fifteen (15) days after service of the Court's injunction and/or judgment as requested herein, a report in writing under oath setting forth the detail the manner and form in which Defendants have complied with the Court's injunction and/or judgment.

      3.      Declaring this case is an exceptional case under 15 U.S.C. § 1117(a).

      4.      Ordering that Defendants provide an accounting to Scotts for any and all gains, profits, and benefits derived from Pennington's wrongful acts complained of herein, and for all damages sustained by Scotts by reason of Pennington's wrongful acts complained of herein, and that such amounts be deemed to be held in constructive trust for Scotts.

      5.      A declaration under 28 U.S.C. §§ 2201 and 2202 that (i) Scotts is entitled to registration of the WATER SMART Marks as exemplified in United States Trademark Application Serial Numbers 77/392,595, 77/238,879, and 77/323,047; (ii) Scotts is entitled to use the WATER SMART Marks exemplified in United States Trademark Application Serial

Numbers 77/392.595. 77/238.879. and 77/323.047 and United States Trademark Registration
Number 3.477.872 in commerce

     6.     Awarding Scotts:

          a.     All profits derived from Pennington's wrongful acts complained of herein:

          b.     All damages sustained by reason of Pennington's wrongful acts
complained of herein. including those available under 15 U.S.C. § 1117:

          c.     Treble the amount of Pennington's profits or actual damages suffered by
Plaintiff under 15 U.S.C. § 1117:

          d.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a)
and/or state law. or in the alternative, reasonable costs and attorneys' fees
on equitable grounds:

          e.     Restitution for Pennington's unfair business practices;

          f.     Punitive and exemplary damages against Defendants and in favor of
Plaintiff in an amount sufficient to deter and punish Defendants for their
willful and wrongful acts:

          g.     Pre-judgment and post-judgment interest; and

          h.     Such other and further relief as this Court deems just and proper.

Dated:    June 10, 2009                    Respectfully submitted,

                                           THE SCOTTS COMPANY, LLC

                                           By its attorneys:


                                           _____
                                           John W. Zeiger (0010707) (Trial Attorney)
                                           3500 Huntington Center
                                           41 South High St.
                                           Columbus, OH 43215
                                           Telephone:    614.365.9900
                                           Facsimile:    614.365.7900
                                           Email: zeiger@litohio.com

                                           Trial Attorney for Plaintiffs
                                           OMS Investments, Inc. and The Scotts Company LLC

Of counsel:

Susan E. Hollander (pro hac vice application)
Kathryn A. B. Bartow (pro hac vice application)
MANATT, PHELPS & PHILLIPS, LLP
1001 Page Mill Road, Bldg. 2
Palo Alto, California 94304
Tel:    (650) 812-1300
Fax:    (650) 213-0260
Email: shollander@manatt.com
        kbartow@manatt.com


Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High St.
Columbus, OH 43215
Telephone:    614.365.9900
Facsimile:    614.365.7900
Email: ferrell@litohio.com

Co-counsel for Plaintiffs OMS Investments, Inc.
and The Scotts Company LLC

## DEMAND FOR JURY TRIAL

Plaintiff OMS demands a trial by jury of all issues triable by a jury.

John W. Zeiger (0010707) (Trial Attorney)
3500 Huntington Center
41 South High St.
Columbus, OH 43215
Telephone:    614.365.9900
Facsimile:    614.365.7900
Email:  zeiger@litohio.com

Trial Attorney for Plaintiffs OMS Investments, Inc.
and The Scotts Company LLC

640-264:193386